UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------------------x
NATIONAL ASSOCIATION OF LETTER          :
CARRIERS, AFL-CIO,                      :
                       Plaintiff,       :
                                        :
                                        :   Case No. 19-2617
        - v. -                          :
                                        :
UNITED STATES POSTAL SERVICE,           :
                                        :
                       Defendant.       :
                                        :
-------------------------------------------------------------------x
```

## COMPLAINT

Plaintiff National Association of Letter Carriers, AFL-CIO ("NALC"), for its complaint, alleges as follows:

### INTRODUCTION

1. This is an action for an injunction pending arbitration. NALC, the labor union that represents city letter carriers employed by Defendant United States Postal Service ("USPS"), initiated a dispute, now scheduled for arbitration in December 2019, challenging unilateral and sweeping changes that USPS has made to letter carriers' work assignments and work hours at a post office in Virginia -- changes that USPS has since implemented at several additional post offices and that it plans to implement at many more. These changes, which have been forced on the letter carriers against their will, have created substantial hardships on them. In particular, by sharply increasing the hours many of them spend walking, delivering heavy bundles of mail, the changes have caused letter carriers to suffer physically, from pain and exhaustion. By time the arbitration takes place in December, and an award issues, it will be too late to remedy these harms, particularly the physical exactions that the letter carriers will have already suffered.

01099982.8

2. For many decades, city letter carriers have typically spent part of their workday in the post office sorting mail for delivery, a process known as "casing," and then spent the remainder of their shift on the street delivering the mail on their delivery route. USPS recently launched a scheme, dubbed the "Consolidated Casing Initiative," to radically refashion the letter carrier job. USPS would like to split the job in two, assigning some letter carriers to work as "caser" letter carriers and others to work as "street" carriers. "Caser" letter carriers would arrive very early in the morning, casing mail for multiple delivery routes, while "street" carriers would spend virtually their entire shift on the street delivering mail.

3. USPS chose the Annandale, Virginia post office as its first test site for the Consolidated Casing Initiative, using the several dozen letter carriers employed there as the involuntary guinea pigs for the experiment. Over NALC's opposition, USPS began implementing the initiative at Annandale in May 2019.

4. In the weeks since, the letter carriers at Annandale have suffered adverse effects. "Street" carriers, who are working more hours and spending almost all of them on the street delivering mail, are suffering physical exhaustion, ailments, pain, and mental stress.

5. USPS has refused NALC's request to cease its implementation of the initiative at Annandale pending the arbitration, and has even refused to hold off expanding the initiative to other post offices around the country.

6. The circumstances of this case warrant an injunction requiring USPS to halt implementation of the initiative pending resolution of the arbitration. The arbitrator will be unable to remedy the harms that the letter carriers will suffer pending arbitration; NALC has a likelihood of prevailing on the merits; USPS will suffer no harm having to cease the initiative at

Annandale and delay implementing it elsewhere pending arbitration; and the public interest favors sparing the letter carriers from needless suffering.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 39 U.S.C. § 409(a), as this is an action against USPS. The Court also has jurisdiction under 39 U.S.C. § 1208(b), as this is a suit for breach of a collective bargaining agreement between USPS and a union of postal employees.

8. Venue lies in this district under 39 U.S.C. § 1208(b), as this Court has jurisdiction over NALC and USPS. Both NALC and USPS maintain their national headquarters, and otherwise conduct business, in this District. In addition, venue lies in this District under 28 U.S.C. §1391(b)(1), because USPS resides in this District, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

9. NALC is a labor union that at all relevant times has served as the collective bargaining representative of a nationwide bargaining unit of city letter carriers employed by USPS. Most city letter carriers are career postal employees, although certain recently hired carriers are non-career employees called "City Carrier Assistants" ("CCA's").

10. USPS is an independent establishment of the executive branch of the United States Government. It operates postal facilities throughout the United States, including in Annandale, Virginia.

**FACTUAL ALLEGATIONS**

Traditional Letter Carrier Work

11. For many decades, probably stretching back to the advent of modern postal delivery, a city letter carrier's daily work has generally consisted of two components: office duty and street duty.

12. Traditionally, a letter carrier begins his or her work shift in the morning, at the postal facility. There, the letter carrier "cases" the mail for his or her route and performs related office work. Casing mail involves sorting mail by address, by placing the pieces of mail for the delivery route into a "case," which is a cabinet-like structure composed of multiple shelves, with slots on each shelf. Although most letter mail is now sequenced into delivery order by automated equipment (using bar codes and optical character readers), there is still a certain amount of mail that carriers must put in delivery sequence manually. In addition, letter carriers typically perform a variety of other office functions before leaving to deliver the mail.

13. After casing the mail and performing other related office work, the letter carrier then typically leaves the postal facility and spends the rest of his or her 8-hour work shift delivering the mail on a designated delivery route.

14. Street delivery is physically taxing work. Routes often require walking all or some of the time. Letter carriers spend hours on their feet, carrying or pushing heavy satchels of mail, often up and down hills or stairs.

15. Street delivery is mostly outdoor work. It exposes letter carriers to all sorts of weather, including rain, sleet and snow, and to other hazards, such as street crime, vehicle traffic, and dog bites. In the short days of winter, it often requires letter carriers to deliver in the dark. In the hot and humid summer months, it exposes letter carriers to the grave dangers of heat illness.

Case 1:19-cv-02617 Document 1 Filed 08/29/19 Page 5 of 13

The Collective Bargaining Agreement

16. At all relevant times, NALC and USPS have been parties to a collective bargaining agreement ("CBA") that sets forth terms and conditions of employment of city letter carriers.

17. Article 15 of the CBA contains a grievance-arbitration procedure under which NALC may demand arbitration of unresolved disputes that arise under the CBA. Article 15, Section 3(F) allows NALC to initiate at the national level a dispute regarding the interpretation of the CBA. It provides that, absent resolution of the dispute, NALC may appeal the dispute to national-level arbitration.

18. Article 5 of the CBA prohibits certain unilateral action by USPS. The parties' jointly authored *Joint Contract Administration Manual* ("JCAM") explains that Article 5 prohibits unilateral actions by management affecting wages, hours or working conditions. The JCAM further explains that consistent, clear and longstanding employment practices may give rise to a binding contractual obligation that management may not change unilaterally.

19. Article 8 of the CBA establishes 8 hours as the length of the workday of a full-time regular letter carrier.

20. Article 41 of the CBA provides a procedure for full-time letter carriers to bid, based on their seniority, for available work assignments.

21. Article 34 of the CBA sets forth a procedure for USPS to study or test time or work standards or new work measurement systems.

22. Article 34(B) requires USPS to keep NALC informed of "the making of time and or work studies which are to be used as a basis for changing current or instituting new work measurement systems or work or time standards." Article 34(C) provides that when USPS "determines the need to implement any new nationally developed and nationally applicable work

or time standards, it will first conduct a test or tests of the standards in one or more installations," and give NALC advance notice of any such test.

23. Except as provided in Article 34, there are no provisions in the CBA which authorize USPS to suspend compliance with the CBA or applicable regulations under the guise of conducting a "test."

24. The CBA does contain a memorandum of understanding between the parties regarding a "City Delivery Task Force" ("Task Force MOU"). The Task Force MOU established a joint management-union task force to, among other things, "[e]xplore various combinations of office and street functions and other alternatives for structuring city carrier routes …" and to jointly test "alternate methods and procedures related to city delivery functions."

25. The CBA incorporates handbooks and manuals promulgated by USPS, to the extent they directly relate to letter carriers' wages, hours or working conditions.

26. One such USPS handbook is the M-39, entitled *Management of Delivery Services*. Another is the M-41, entitled *City Delivery Carriers Duties and Responsibilities*.

27. Chapter 243 of the M-39 handbook sets forth a detailed procedure for the adjustment of routes that are too long or too short for an 8-hour work shift.

28. In 1992, National Arbitrator Richard Mittenthal issued an award ("the Mittenthal Award") concerning substantial changes to city letter carrier routes that USPS unilaterally implemented in Hempstead, New York. Arbitrator Mittenthal found that by transferring delivery territories from some routes to others, USPS acted in violation of the M-39 handbook, which only permits route adjustments if the routes are already "out of adjustment," being either too long or too short for an 8-hour shift. The Mittenthal Award, which constitutes a

final and binding interpretation of the CBA, holds that management may not restructure a route that is properly adjusted to 8 hours.

USPS's Consolidated Casing Initiative

29. By letter dated January 9, 2019, USPS informed NALC that it intended to study "the impact of consolidated casing assignments on city delivery routes." The letter claimed that USPS's action was "[i]n accordance with Article 34" of the CBA.

30. By letter dated March 21, 2019, USPS informed NALC that it planned "to test restructured city letter carrier assignments by, to the extent practical, separating office duties, including but not limited to casing, from street duties." The March 21 letter said that the initial "test site" would be the Annandale, Virginia post office, at which there were 60 letter carriers.

The Arbitration

31. By letter dated April 24, 2019, NALC initiated a national-level interpretative dispute arising from USPS's announced Consolidated Casing Initiative. NALC's letter explained that the unilateral action by USPS would violate Article 5 of the CBA, since it "fundamentally redefines the terms and conditions of letter carrier duty assignments." It also asserted that the initiative would result in route adjustments inconsistent with the M-39, as interpreted by the Mittenthal Award. NALC's April 24 letter explained that the initiative was not authorized by Article 34. Finally, the letter asserted that, outside of collective bargaining negotiations, the City Delivery Task Force provided the only mechanism that would allow a test of the Consolidated Casing Initiative.

32. NALC and USPS have agreed that, absent resolution of the interpretive dispute, a national-level arbitration ("Arbitration") of the dispute will take place on December 18, 2019, before Arbitrator Shyam Das.

33. USPS has not asserted that the dispute is not arbitrable.

The Consolidated Casing Initiative at Annandale

34. Despite the pending arbitration, USPS, on May 18, 2019, unilaterally began the Consolidated Casing Initiative at the Annandale post office.

35. USPS assigned certain letter carriers at Annandale to work as "office casers," responsible for casing the mail for multiple routes. These carriers have been required to arrive for work at 5:30 am. Those assigned to be "street" carriers are required to spend virtually their entire workday on the street delivering mail. Moreover, management moved the start times of many "street" carriers from 7:30 or 8:00 am to 9:15 am, meaning that their workday ends later than before.

36. USPS gave the Annandale carriers no choice about whether they would be assigned as "office casers" or "street" carriers.

37. Since USPS implemented the Consolidated Casing Initiative, work hours at Annandale have mushroomed, with carriers working on average well over 8 hours daily. CCA's have been working six days per week.

38. As part of the initiative, USPS reconfigured many of the routes at Annandale, including by transferring delivery territory from certain routes to others.

39. The initiative has caused severe hardships on the Annandale letter carriers. Because those assigned to work as "street" carriers are working more hours, and spending almost all of those hours delivering mail, their time walking on the street has risen sharply. As a result, "street" carriers are experiencing physical exhaustion, ailments, pain and mental stress.

40. Moreover, their later start times mean they spend less time on the street during the cooler morning hours and more time exposed to the heat of the long summer afternoons. Come fall and winter, they will be delivering in the dark.

41. The later end times have made it nearly impossible for these "street" carriers to pick up their children after school on time, or to go to doctor appointments or run necessary personal errands before offices and businesses close.

42. Despite the later start time, those Annandale carriers who commute still have to arrive at the post office early if they want to avoid driving through the thick of the metro area morning rush. The later end time, and longer hours of work, often puts them into the thick of the evening rush on their way home. All this makes their day that much more exhausting and stressful.

43. To escape the new regime that USPS has imposed at Annandale, some letter carriers have considered quitting or retiring earlier than they had anticipated.

CBA Violations

44. NALC has a strong case on the merits of its arbitration challenging the Consolidated Casing Initiative.

45. Having letter carriers first case the mail for their routes and then deliver that mail has been a consistent, mutual and well-established practice going back decades. USPS's effort to radically redesign the letter carrier job, by splitting it into two separate functions, constitutes a unilateral management action directly affecting letter carriers' conditions of employment that is prohibited by Article 5.

46. By reconfiguring the routes at Annandale, USPS performed route adjustments inconsistent with the M-39 handbook and the Mittenthal Award.

47. USPS's attempt to justify its unilateral action under Article 34 fails because the sweeping changes that USPS has made to carrier work schedules, assignments and working conditions at Annandale are not studies or tests of time or work standards or new work measurement systems. Indeed, USPS failed to provide an affirmative response when NALC, in a

series of written questions to USPS about the Consolidated Casing Initiative, asked "[w]ill any new work measurement systems or work or time standards be tested during the consolidated casing assignments test?"

48. Moreover, USPS's unilateral initiative at Annandale impermissibly end-runs the City Delivery Task Force.

49. In addition, management at Annandale, in order to carry out the Consolidated Casing Initiative, has given carriers there instructions that are at odds with USPS handbooks.

50. For example, the M-41, at Sections 42, 43 and 44, instructs letter carriers upon returning from street delivery to perform certain tasks, such as disposing of collected mail, processing registered and certified letter mail, and processing undelivered mail. Management at Annandale has instructed "street" carriers to skip these required tasks to ensure that they minimize their office time each day.

51. Another example: the M-39, at Section 117.1(k), instructs that letter carriers are to keep at their case mail being held for customers who are away, unless space is not available in the case. Management at Annandale has instructed such "hold" mail to be kept not at carriers' cases but at a central location. This not only violates the M-39 but has led to confusion regarding the processing of "hold" mail and has made it harder for "street" carriers to keep track of it.

Expansion of the Initiative to Additional Post Offices

52. Not content with limiting these unilateral changes to one post office, at least until an arbitrator determines whether they violate the CBA, USPS has rushed forward with plans to roll out the initiative to more stations.

53. By letter dated July 9, 2019, USPS announced that, as the "second phase" of its plans, it would implement the Consolidated Casing Initiative changes at seven more post offices, in Virginia, Pennsylvania, Michigan, Connecticut, California, Arkansas and Colorado.

54. By letter dated July 31, 2019, NALC requested that USPS cancel any further implementation of the Consolidated Casing Initiative and immediately begin phasing it out at Annandale. It also requested that, in phasing out the initiative at Annandale, USPS work with NALC on providing relief to the letter carriers there suffering physical distress and other problems.

55. To date, USPS has not agreed to halt the Consolidated Casing Initiative at Annandale, to cancel its expansion to other post offices, or to work with NALC to provide relief to the affected Annandale carriers.

56. By letter dated August 1, 2019, USPS informed NALC that it would implement "phase two" of the initiative on certain dates in August 2019. It has now implemented the Consolidated Casing Initiative changes at several additional post offices.

57. USPS has plans to spread the changes even further. By letter dated August 2, 2019, USPS informed NALC that, as a "third phase," it intends to implement the consolidated casing changes at 58 additional postal facilities.

## CLAIM FOR AN INJUNCTION PENDING ARBITRATION

58. NALC repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

59. The letter carriers at Annandale, and on information and belief at other postal facilities where USPS has implemented or will implement the Consolidated Casing Initiative, have suffered or will suffer substantial harms as a result of the Consolidated Casing Initiative, harms that cannot be remedied retroactively by an arbitration award.

60. NALC is likely to prevail on the merits of its arbitration claim that USPS breached the CBA by unilaterally implementing the Consolidated Casing Initiative.

61. USPS would suffer no harm by having to cease implementation of the Consolidated Casing Initiative at Annandale and delay its implementation at other post offices pending resolution of the Arbitration.

62. The public interest favors sparing the letter carriers affected by the Consolidated Casing Initiative from needless suffering

63. For these reasons, the Court should issue an injunction pending resolution of the Arbitration.

## PRAYER FOR RELIEF

WHEREFORE, NALC respectfully requests that the Court issue:

1. an injunction, to remain in place until a final arbitration award issues in the Arbitration, that

    a. prohibits USPS from implementing or continuing to implement the Consolidated Casing Initiative at Annandale or at any other postal facility; and

    b. requires USPS, while phasing out the Consolidated Casing Initiative, to accommodate the letter carriers affected by the initiative, by taking measures that would ease the burden of the Consolidated Casing Initiative on them, and that requires USPS to confer in good faith with NALC regarding what accommodation measures would be appropriate, and

2. such other and further relief as the Court deems appropriate.

Dated:  August 29, 2019

Respectfully submitted,

/s/ *Peter D. DeChiara*

Peter D. DeChiara (*pro hac vice* motion to be filed)
Joshua E. Ellison (*pro hac vice* motion to be filed)
Kate M. Swearengen (*pro hac vice* motion to be filed)
COHEN, WEISS AND SIMON LLP
900 Third Avenue
New York, New York 10022-4869
Tel: (212) 563-4100

7

/s/ *Victoria L. Bor*

Victoria L. Bor (D.C. Bar. No. 288852)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C.  20001
(202) 785-9300

*Attorneys for Plaintiff National Association of Letter Carriers, AFL-CIO*